BROWNE v. PRATT & LETCHWORTH CO.

(Supreme Court, Appellate Division. Fourth Department. July 7, 1908.)

MASTER AND SERVANT—INJURY TO SERVANT—CONTRIBUTORY NEGLIGENCE—INSTRUCTIONS.

> Plaintiff, a man 22 years old, employed in defendant's factory, which was 300 feet long, at a saw, was injured, on the third night of his employment therein, while putting on the belt which drove his saw, he standing on a crossbeam above his saw, and for the purpose of steadying himself putting his hand on the top of the rail, 6 feet above the crossbeam, on which rail ran a crane, and the crane, coming from behind, running over his hand. There was evidence that there were not more than 10 or 15 minutes at a time when the crane was not moving. Plaintiff, while not denying that the crane passed up and down the room, testified that he paid no attention to it, that he did not know whether or not it passed over his head, and that he never paid any attention of that kind, looking about the shop. Held, that it was error to deny, with the statement that it must be found that plaintiff knew and appreciated the danger of putting his hand on the rail, or that he had been instructed as to the danger, a requested instruction that if plaintiff had noticed that the crane was frequently passing up and down the track, and placed his hand on the rail with such knowledge, he could not recover.

> Spring and Williams, JJ., dissenting.

Appeal from Trial Term, Erie County.

Action by Louis W. Browne against the Pratt & Letchworth Company. From a judgment for plaintiff, and from an order denying a motion to set aside the verdict and for a new trial, defendant appeals. Reversed, and new trial ordered.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Evan Hollister, for appellant.

Philip A. Laing, for respondent.

KRUSE, J. The plaintiff, a workman in defendant's employ, placed his hand on top of the rail upon which a traveling crane was moving, and his hand was injured. He brings the action to recover damages for the personal injuries so sustained, alleging that the defendant was negligent in placing him at work in a dangerous place, made so by the movements of the traveling crane, without instructing or warning him of the danger. The defendant is a manufacturing corporation, making iron castings and the like. It has a machine shop. The shop is 300 feet long and 37 feet wide. In the shop is a traveling crane, about 16 feet above the floor. It runs on two rails, one on each side of the building. The rails are laid on and along I-beams. The crane runs backward and forward the entire length of the shop. It is used to distribute castings and other material. It is operated by a man in a cage at one side of the crane, under directions of some one on the floor. At one side of the shop are located revolving saws. They are operated by power supplied by means of shafting, pulleys, and belts.

The plaintiff was at work at one of these saws. A crossbeam resting on a standard extends over the saw. The crossbeam is about 10 feet above the floor, and a little over 5 feet below the top of the rail upon which the crane runs. There is a line shaft along the side of the shop, a little below and a little farther away from the side of the wall than the I-beam. There is a pulley on this shaft, which drives the saw in question by means of a belt. The belt was off, and the plaintiff was directed by the foreman in charge of his branch of the work to get up on the crossbeam and put the belt on the pulley. He got up on the crossbeam, which projected from the side over the saw, and put his left hand on top of the rail to steady himself, with his back towards the crane. The crane came along, passed over his fingers, and crushed them. He could have taken hold of the lower flange of the I-beam, but perhaps not so conveniently, nor hold himself so securely. The shopwork seems to have been carried on night and day. The plaintiff worked nights. He had worked there but a short time when he was injured, being hurt on the third night of his employment. He testified that when he went to work there he received no instructions, that he was not told to look out for the crane, and that he never noticed it. There was a printed notice posted, warning employés to look out for the crane; but plaintiff testified that he never saw it, and that just before he was hurt he was told by the foreman to put on the belt. He told the foreman that he did not know anything about putting on the belt. The foreman said to get up on the beam, hang on, take hold, and put, it around the pulley. The plaintiff attempted to comply with the directions, and was injured in the manner stated.

While we think the evidence sufficient upon the question of the defendant's negligence to send the case to the jury, the question of the plaintiff's contributory negligence is not so free from doubt. There was a general foreman in charge of the shop, over the one who gave the directions to the plaintiff. He was not in the defendant's employ at the time of the trial, and was called as a witness by the plaintiff. He testified that, while the crane did not move constantly up and down the shop, it would probably not stand stationary longer than 10 or 15 minutes at a time; that it was used quite a little the night of the accident, before the plaintiff was hurt. The plaintiff himself does not deny that the crane passed up and down; but he says he paid no attention to it, and that he did not know whether it passed over his head or not. As he puts it:

"I never paid any attention of that kind, looking around the shop. I paid attention to my work."

If this crane was used, passing up and down frequently, directly over the plaintiff, during the time he was at work in this shop, as the undisputed evidence shows it was, it seems incredible that the plaintiff should not have noticed the crane and the manner of its operation; and, if he did, he must have known and appreciated the danger of putting his hand upon the rail over which the crane was moving back and forth.

After the evidence was closed, and before the case was summed up and submitted to the jury, in answer to an inquiry of counsel for the defendant, the presiding judge stated that if the jury should find as a matter of fact that the plaintiff knew of the operation of the crane, and knew that it was liable to run along the rail there at any moment, and put his hand on the rail, he was guilty of contributory negligence; but in charging the jury it seems to have been left uncertain (at least so defendant's counsel claims) whether, if the jury found those facts, the question would still be left open whether the plaintiff knew and appreciated the danger involved in putting his hand upon the rail, and at the close of the charge the court was asked to specifically charge that if the plaintiff had noticed that the crane was frequently passing up and down the track, and placed his hand on the rail with such knowledge, he cannot recover. This request was denied, for the reason, as stated by the judge, that it must be found that he knew and appreciated the danger of putting his hand upon the rail—either that, or that he had been instructed as to the danger; and he refused to charge as requested, except with this qualification, to which defendant's counsel excepted.

It seems to me that the defendant was entitled to this request without qualification. The plaintiff was a man 22 years of age, and presumably of ordinary intelligence. If he knew that this crane was frequently passing up and down the track, and placed his hand on the rail, he must have appreciated that this heavy crane passing over it would injure his hand. We do not decide that the plaintiff was guilty of contributory negligence as a matter of law; but we think that the request should have been charged without the qualification,

and that the error was so prejudicial to the defendant as to require a new trial.

The judgment and order should therefore be reversed, and a new trial ordered, with costs to the appellant to abide the event.

McLENNAN, P. J., and ROBSON, J., concur.

SPRING, J. (dissenting). The defendant is a manufacturing corporation operating a plant in the city of Buffalo for the manufacture of castings. For three days in January, 1905, the plaintiff, a young man then 22 years of age, was employed as a common laborer in this plant, working nights. The plant of the defendant consisted of a one-story building, 318 feet long and 37 feet wide. Along one side of the building the entire length was a series of revolving saws, which were used in cutting off the burrs or rough pieces from the castings, and the plaintiff was engaged in operating one of these. On either side of the building and about 16 feet from the floor, which was of earth, was a track on which was run a crane extending the entire width of the building. There was also a carriage on top of this crane, and the whole thing was operated by a man in a cage at one side of the crane. The crane ran backward and forward the entire length of the shop, and was used to distribute castings and other material used in carrying on the plant. The saws were all run by one line shaft on the side of the building, which was nearly 14 feet from the floor. Each of these revolving saws was under the shaft, and there was an overhead beam 8 inches square, connected with the saw frame, which could be elevated to a vertical position by means of a pulley and chain attached to the shaft. The belt over the pulley was of leather and about 4 inches in width. This crossbeam was 10 feet 9 inches above the floor, and 2 feet 8 inches lower than the shaft referred to; and from the top of the crossbeam to the top of the rail was about 5 feet 7 inches.

This was the third night the plaintiff had been working, and about 12 o'clock he was instructed by Wolf, who was the second foreman, to go up on top of the crossbeam and put the leather belt over the pulley, as it had slipped off. The plaintiff knew nothing about this kind of work and had never been instructed in regard to it. In his testimony he said that he told Wolf:

"I didn't know anything about putting the belt on."

Wolf replied:

"Go on, and get up there on the beam, and hang on, and put it on. * * * All you have got to do is to get up on that beam and catch hold there. Take hold, and put it around the pulley. That is all you have to do."

In response to this direction the plaintiff climbed up on the crossbeam. The only thing he could take hold of to steady himself was the I-beam, which was 15 inches high and 6 or 8 inches wide, and on which the track for the crane was laid. He placed his left hand on top of the rail, and leaned over with his right hand to put the belt on the pulley, when the crane came along, without any warning,

ran over his fingers, and crushed them. The place he was stationed was about 60 feet from the south end of the building, and he was facing the north end. The crane started from the south end of the building, running along the track; so that the plaintiff's back was toward the crane, and he was in a stooping posture. There are three suggestions made in the prevailing opinion bearing upon the conduct of the plaintiff:

First. There was a flange on the underside of the I-beam five or six inches wide, and it is claimed he should have taken hold of that flange. He received no instruction to steady himself in that way. While shifting the belt his feet were on the crossbeam and he was stooping over, which made the position insecure, and to hold himself with his hand above his head on the lower side of a plate six inches in width would afford small protection to him. He did the most natural and reasonable thing in order to keep himself from falling when he placed his hand on top of the I-beam, which was two or three inches above his head. In no other way could he steady himself when his body was bent over and in motion putting on the belt.

Second. The notice warning the men "to look out for the crane while moving up and down the shop" is referred to. Strangely enough, the only place this ambiguously phrased notice seems to have been placed was in the office, and the plaintiff was never in that part of the building, nor was his attention ever called to the notice.

Third. The intimation is made that it seems incredible that the plaintiff was not aware of the operation of the crane. His work was on the floor, 16 feet below the crane. He was an ordinary laborer. While he may have known in a general way that the crane was running through the building, the method of its operation was unknown to him. The crane made but little noise while running, and I think we cannot say as matter of law the plaintiff should have known of its approach. As already shown, he was reluctant to climb up on the crossbeam and to put on the belt. He evidently appreciated his lack of knowledge of the machinery in the plant. He should not be charged with negligence as matter of law.

It is claimed by the defendant that Wolf was merely a coemployé. Wolf was the man who had hired the plaintiff, and the evidence shows without dispute that he had charge of the men, especially of one gang, when the superintendent was away, or when his supervision for any reason was required. Beyond that, however, the superintendent himself was five or six feet from the plaintiff when Wolf directed him to go on the crossbeam, heard the direction that was given to him, and did not countermand it or interfere in any way, so that, even if Wolf had not been a superintendent, his direction must be deemed to be that of the defendant. O'Brian v. Buffalo Furnace Co., 183 N. Y. 317, 76 N. E. 161.

At the close of the evidence the defendant's counsel made the following suggestion to the court:

"I would like to ask the court, so as to clear up my understanding about the particular ground of going to the jury, whether it was your ruling that, assuming the man knew the crane was constantly passing over his head, then

he would have been guilty of contributory negligence, and that the verdict would be for the defendant."

To which the court replied as follows:·

"I don't know as there is any objection to repeating substantially what I said to you: If the jury should find as a fact that he knew of the operation of the crane, and knew that it was liable to run along on the rail there at any moment, and he put his hand on the rail, that he was guilty of contributory negligence."

At the close of the charge the counsel for the defendant made this request:

"I ask the court to charge the jury that if the plaintiff had noticed that the crane was frequently passing up and down the track, and placed his hand on the rail with such knowledge, he cannot recover."

To which the court responded:

"I deny the request, for the reason that it must be found that he knew and appreciated the danger of putting his hand upon the rail—either that, or that he had been instructed as to the danger.

"Mr. Hollister: Do you charge in those words, or with the qualification?

"The Court: I think it is a kind of a qualification. You better except both ways.

"Mr. Hollister: I except to the refusal to charge, and to the qualification."

In the first place, I think the instruction had been fairly covered before; and, beyond that, I think the qualification made by the court, in view of the circumstances, was proper. Much had been made of the fact that the plaintiff had worked in the building for three nights, and that the crane was frequently running along over his head; the defendant claiming that he ought to have known of the manner in which it passed along on these tracks. While he may, as already indicated, have had a general knowledge of the operation of the crane, in order for this knowledge to be effective in precluding his right to recover, he must have appreciated the significance of its operation. So I think that the court was right when he limited the request made with the statement if "he knew and appreciated the danger of putting his hand on the rail," or if he had been instructed of the danger. In other words, the general information that he might have had that the crane was passing up and down the track may not itself have been sufficient to advise him fully of the dangers which he encountered when standing on the crossbeam with the track above his head.

I think there was a fair question of fact in this case, and that the plaintiff is entitled to recover. He was corroborated to a considerable extent by the former superintendent of the defendant, and no one seems to have contradicted him. The question of the amount of the damages is not urged. In fact, it is stipulated in the case that it is not raised upon this appeal.

I think the judgment should be affirmed.

WILLIAMS, J., concurs.